## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JEFFREY MOLITOR, LAURA C. DE LA CABADA, STEVE CLARKE, and RUTH MAKI, individually and on behalf of all others similarly situated, *Plaintiffs,* v. MANASSEH JORDAN MINISTRIES, INC., a New York Religious Corporation, and YAKIM MANASSEH JORDAN, an individual, *Defendants.* | CASE NO. _____ (Pending in the United States District Court for the Northern District of Ilinois,Case No. 1:16-CV-02106) |

## MOTION TO QUASH SUBPOENA TO KINGDOM MINISTRIES CHURCH, INC. AND FOR PROTECTIVFE ORDER

COMES NOW, Kingdom Ministries Church, Inc. ("Kingdom"), a non-party,

and files this Motion to Quash and for Protective Order pursuant to Rules 26(c)

and 45(d)(3) of the FEDERAL RULES OF CIVIL PROCEDURE, showing this Honorable

Court as follows:

## INTRODUCTION

This is a putative class action brought by consumers, on behalf of consumers, in the United States District Court for the Northern District of Illinois – Eastern Division that alleges Defendants Mannasseh Jordan Ministries, Inc. ("MJM") and Yakim Manasseh Jordan ("Jordan") (collectively, "Defendants") committed multiple violations of Telephone Consumer Protection Act, codified at 47 U.S.C. § 227 *et. seq.* (the "TCPA"). Plaintiffs, in their own words, describe the nature of this action as being one designed "to put a stop to the incessant and abusive spam robocalling practices [Defendants] have perpetrated for years." *See* "First Amended Complaint" at p. 1, a true and accurate copy of which is attached hereto as Exhibit "1."[1] Purporting to be a part of this endeavor, in or around May 15, 2017, counsel for Plaintiffs and the Putative Class served on non-party Kingdom at its principal office address, a Subpoena to Testify at a Deposition in a Civil Action, to which was appended a Notice of 30(b)(6) Deposition setting out

---

[1] So that the Court may have a full account of the pleadings in the Illinois Action included, a true and accurate copy of the Answer to the First Amended Complaint is also included in Exhibit "1."

certain topics (collectively, the "Subpoena").[2] Non-party Kingdom is a Georgia nonprofit corporation with its principal office located in Jonesboro, Georgia.[3]

In contravention of FED. R. CIV. P. 45, the Subpoena commands non-party Kingdom to produce a corporate designee to testify about a multitude of topics and a broad array of sensitive information that both go well beyond the claims and defenses set out in the above-captioned lawsuit's pleadings.[4] More precisely, these requests go well beyond Plaintiffs' own stated purpose in bringing this action: to stamp out unwanted robocalling. Far from honoring this objective, the Subpoena seeks, among other things, sensitive information related to a non-party's religious practices, its financial condition, its donor rolls, and the donations themselves— including the uses thereof. None of this bears on the alleged robocalling practices of the Defendants MJM and Jordan, which Plaintiffs must establish to prevail on the merits (let alone certify a class). In fact, no conduct of any kind—malicious or otherwise—is alleged against non-party Kingdom in the pleadings filed with the Court. Suffice it to say, the wide net Plaintiffs are casting with the Subpoena

---

[2] A true and correct copy of the Subpoena is attached hereto as Exhibit "2."

[3] A true and correct copy of Kingdom's 2017 Annual Registration with the Georgia Secretary of State is attached hereto as Exhibit "3."

[4] As this motion also seeks the entry of a protective order, Kingdom notes that the undue burden analysis under FED. R. CIV. P. 45 also counsels in favor of the entry of a protective order under FED. R. CIV. P. 26(c)(1).

subjects Kingdom to an undue burden and this counsels in favor of the Court exercising its power to quash this procedural overreach.

With Kingdom's principal office being located in Jonesboro, Georgia, Kingdom brings this motion before this Court as it is the Court for the district wherein the deposition will be taken and where compliance with the subpoena must take place. *See* FED. R. CIV. P. 26(c)(1) ("on matters relating to a deposition, in the court for the district where the deposition will be taken"); and 45(d)(3)(A) ("[o]n timely motion, the court for the district where compliance is required . . .")

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.1

On Thursday, June 1, 2017, Georgia counsel for Kingdom, Matthew D. Treco ("Mr. Treco"), telephoned counsel for Plaintiffs, Benjamin H. Richman ("Mr. Richman"), to discuss the matters set out in this motion. Both Mr. Treco and Mr. Richman each made a good faith attempt to resolve their differences but were unable to reach an accord. That these attempts were unsuccessful was not the fault of either Mr. Treco or Mr. Richman.

In sum, Mr. Treco relayed the notion that the subject matter of the subpoena (and the Rule 30(b)(6) topics appended thereto) went well beyond the claims and defenses set out in the pleadings and, therefore, the information sought by the subpoena was irrelevant. To that end, Mr. Treco emphasized that the Subpoena's

categories were overbroad and imposed an undue burden on a non-party, Kingdom. To ameliorate that burden, Mr. Treco asked Mr. Richman to limit Plaintiffs' inquiry to matters confined by the claims and defenses in the pleadings. Mr. Richman declined to so limit the Subpoena's inquiry. As a result, non-party Kingdom was forced to file the present motion.

## ARGUMENT AND CITATION TO AUTHORITY

**I.  NON-PARTIES ARE ENTITLED TO SPECIAL PROTECTIONS FROM SUBPOENAS THAT IMPOSE ON THEM UNDUE BURDENS SUCH AS ATTEMPTS TO PRY INTO MATTERS THAT ARE BEYOND THE CLAIMS AND DEFENSES IN THE PLEADINGS—THESE MATTERS BEING IRRELEVANT.**

"Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the court for the district where compliance is required must quash or modify a subpoena that . . . [] subjects a person to undue burden." *Armstead v. Allstate Property & Casualty Insurance Company*, Case No. 1:14-cv-586-WSD, 2016 WL 3626272, at *1 (N.D. Ga. Jul. 7, 2016) (citing FED. R. CIV. P. 45(d)(3)(A)).[5] The protective mandate of Rule 45 is not to be confused with the "discretionary language of Rule 26(c), under which a court **may** make any order which justice requires to protect a party or person from . . . undue burden." *Uppal v. Rosalind Franklin University of Medicine and Science*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015) (emphasis added).

---

[5] In addition to the court, the rule imposes a separate mandate on the attorney issuing the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. FED. R. CIV. P. 45(d)(1).

In fact, "[t]he desideratum [or sin qua non] of [Rule 45] is the protection of non-parties from undue burdens." *Id*. (citing *Last Atlantis Capital, LLC v. AGS Specialist Partners*, 2013 WL 182792, at *1 (N.D. Ill. 2013)). "It is a command." *Id*.

When determining whether a non-party needs this protection "because it presents an undue burden" courts consider the "relevance of the information requested, the requesting party's need for the [information], the breadth of the [] request, the time period covered by the request and the burden imposed." *Estate of Manship v. United States*, Case No. 1:08-cv-3239-CAP, 2009 WL 10668306, at *7 (N.D. Ga. Jun. 5, 2009).[6] Informing these inquiries is the important, and not to be forgotten, truth that "nonparties are **not** treated exactly like parties in the discovery context." *American Soc. Of Media Photographers, Inc. v. Google, Inc.*, Case No. 13-c-408, 2013 WL 1883204, at *2 (N.D. Ill. May 6, 2013). In fact, "non-parties are entitled to somewhat greater protection." *Id*. And for that reason, "the possibility of mere relevance may not be enough." *Id*.

---

[6] And where, as here, the subpoena commands attendance at a deposition being taken pursuant to FED. R. CIV. P. 30(b)(6), Plaintiffs must "describe with reasonable particularity the matters for examination." *Federal Deposit Insurance Corporation v. Hutchins*, Case No. 1:11-CV-1622-AT, 2013 WL 12109446, at *2 (N.D. Ga. Oct. 25, 2013) (citing FED. R. CIV. P. 30(b)(6)).

Notably, "whether the information sought is relevant to the issues in the lawsuit is part of the analysis of whether the burden is undue." *Builders Ass'n of Greater Chicago v. City of Chicago*, Case No. 96-c-1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002). And it is not the case that "any evidence that [is] relevant to the subject matter of th[is] case is fair game." *Uppal*, 124 F. Supp. 3d at 814. Rather, "[t]he 2000 amendments to Rule 26(b)(1) narrowed that definition so that today parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Uppal*, 124 F. Supp. 3d at 814. Indeed, the Advisory Committee explained that this amendment "signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are **not identified** in the pleadings." FED. R. CIV. P. 26(b)(1), Advisory Committee Notes to 2000 Amendments. Simply put, discovery, through subpoenas or otherwise, is confined by what has been alleged, and discovery tools are not to be used to venture beyond the allegations in the pleadings in an effort to gin up additional and yet to be identified claims.

If, however, Kingdom were to read between the lines, Plaintiffs appear to be investigating transfers of assets and financial transactions in an effort to establish fraudulent acts, including fraudulent transfers of assets. Of course, a review of the pleadings shows that no such conduct has been alleged as to Kingdom. And putting

aside that Plaintiffs are not executing on a judgment pursuant to FED. R. CIV. P. 69 (the class is not even certified yet), even if it were, discovery such as that presently sought in the Subpoena would require a "somewhat heightened showing of necessity and relevance." *Fudali v. Pivotal Corporation*, 2009 WL 10668516, at *5 (N.D. Ga. Oct. 30, 2009) (discussing what is required to pry into the sensitive financial affairs of non-parties even in post judgment discovery). Plaintiffs have made no such showing.

The heightened showing described above is instructive, because it is clear that even with a judgment in hand, a party needs to have a substantive basis for prying into a non-party's sensitive affairs. Here, however, Plaintiffs are not even judgment creditors and, yet, they would presuppose to invoke this Court's subpoena power to extract sensitive information from a non-party with even less justification. This, again, counsels in favor of quashing the Subpoena.

## II.   THE CLAIMS SET OUT IN PLAINTIFFS' PLEADINGS ARE CONFINED SOLELY TO RELIEF UNDER THE TCPA.

As previously mentioned, Plaintiffs were moved to bring this action in the United States District Court for the Northern District of Illinois "to put a stop to the incessant and abusive spam robocalling practices [Manasseh Jordan Ministries, Inc. and Yakim Manasseh Jordan] have perpetrated for years." Dkt. No. 11-1 at p. 1. Specifically, Plaintiff Molitor alleges that he has received more than 50

robocalls from Defendants, all of which feature a prerecorded voice. Dkt. No. 11-1 at p. 15. Likewise, Plaintiff De la Cabada alleges that she has received more than 108 robocalls from Defendants. *Id.* at p. 18. Plaintiff Clarke alleges that he has received at least 14 similar calls. Dkt. No. 11-1 at p. 18. And Plaintiff Maki alleges that he has received at least 6 similar calls. *Id.* at 19. As a result of this alleged conduct, Plaintiffs Molitor, De la Cabada, Clarke, and Maki, individually, and on behalf of a putative class, allege that Defendants have violated federal law— specifically, 47 U.S.C. § 227(b)(1)(A)(iii)—and they and the putative class members are entitled to the statutory damages set out in the TCPA. This is the only cause of action pleaded, and the prayer for relieve is similarly confined to relief under the TCPA.

### III. PLAINTIFFS' SUBPOENA IS NOT DESIGNED TO DEVELOP TCPA CLAIMS IN PLAINTIFFS' PLEADINGS; RATHER, THE SUBPOENA PRIES INTO THE RELIGIOUS AND FINANCIAL AFFAIRS OF A NON-PARTY IN AN APPARENT ATTEMPT TO DEVELOP NEW CLAIMS.

Plaintiffs' Subpoena appears, on its face, not to be designed to develop the existing TCPA claim found in the pleadings at all. Instead, the Subpoena is designed to pry into the religious and financial affairs of non-party Kingdom— issues that bear no relationship to the claims and defenses identified in the pleadings—all in a rather transparent attempt to develop new claims. This is not appropriate and provides the Court ample justification to quash the Subpoena.

Furthermore, some of the information sought is either freely available in the public record or, to the extent it is available at all, it can be obtained from one of the named Defendants by propounding discovery requests in the ordinary course.

A.    Topic No. 1: Matters Relating To The Formation And Operation Of Kingdom's Religious Organization.

This deposition topic does not develop or further the TCPA claims in Plaintiffs' pleadings. Matters relating to Kingdom's incorporation have no bearing on whether or not Defendants have, in fact, violated the TCPA. Moreover, information relating to the formation of Kingdom can be found in its incorporating documents of Kingdom, which are publicly available through the Secretary of State of the State of Georgia on its webpage. Therefore, even if Plaintiffs insist on obtaining this irrelevant information, it is not necessary to depose Kingdom to do so. Persisting in this effort in spite of this imposes a needless and unnecessary burden on expense on Kingdom, which Plaintiffs' counsel should be endeavoring to avoid. *See* FED. R. CIV. P. 45(d)(1).

Furthermore, while the possible universe of information related to the "formation" of Kingdom may be finite, the universe of information related to the "operation" of Kingdom encompasses any number of matters—from sensitive donor information, internal communications, etc. With reference to the claims and defenses in the pleadings it is difficult to comprehend how this "anything and

everything" topic fits within the narrowly pleaded complaint, which seeks relief

only for alleged violations of the TCPA. Not to mention, the broad nature of such a

topic is not sufficiently particular as required by FED. R. CIV. P. 30(b)(6). Simply

put, this information, like much of the information sought by Plaintiffs, does not

assist in establishing whether or not Defendants, in fact, violated the TCPA. As

such, this information is irrelevant. *See Uppal*, 124 F. Supp. 3d at 814.

B.    Topic Nos. 2, 12, & 14: Matters Relating To Finances, Donations, And Transfers Of Assets.

*Topic No. 2: Your Financial Condition, Including—During The Relevant Time Period—Your Top-Line Revenue, All Sources Of Revenue, Profit And Loss Statements, Balance Sheets, Asset Transfers, And Tax Returns.*

*Topic No. 12: Donations Kingdom Receives Through Kingdom's Website Or Elsewhere, Including How Those Funds Are Used, Allocated And Distributed.*

*Topic No. 14: All Transfers Of Money, Ownership Of Any Investment, Any Other Assets From Kingdom To Any Individual Entity, Or Received By Kingdom From Any Other Individual Or Entity.*

It is improper for Plaintiffs to pry into the financial affairs of non-party

Kingdom, a religious organization absent a heightened showing of relevance and

necessity. *See Fudali* 2009 WL 10668516, at *5. It goes without saying, that these

topics, as with most of the others, do not further or assist in developing the single

TCPA claim in Plaintiffs' pleadings. And not only are these topics overly broad in

and of themselves, but they seek information that goes beyond the scope of the

claims and defenses in the pleadings. Kingdom's financial condition informs in no way the violations of the TCPA alleged to have been committed by Defendants. Kingdom's line item expenses, its cash position, the accrued depreciation of its long term assets, and the like, do not further Plaintiff's claims regarding robocalling and, therefore, they are beyond the permitted scope of a subpoena to a non-party. *See Uppal*, 124 F. Supp. 3d at 814.

Furthermore, the identities of donors to a religious organization are highly confidential, and making public these identities and donation amounts will reveal the religious beliefs otherwise anonymous members of the public may want kept private. Consequently, revealing such information may discourage future donations—donations being the lifeblood of a religious organization or any nonprofit for that matter. Moreover, and as with other sensitive financial information sought in the Subpoena, to the extent that Plaintiffs are actually seeking information about Defendants finances and/or transactions, Plaintiff should serve Defendants with party discovery in the ordinary course. Defendants are capable of providing this information if it exists. Prying into a non-party's affairs to potentially get at a party's information imposes an unnecessary and burden expense—it can, and should, be avoided by serving discovery on a party to the litigation. *See* FED. R. CIV. P. 45(d)(1).

Suffice it to say, these topics are overbroad, invasive, and do not appear calculated to develop the single TCPA claim in Plaintiffs' complaint; as such, these are improper deposition topics and should not be permitted. *Estate of Manship*, 2009 WL 10668306, at \*7.

      C.    <u>Topic Nos. 3 & 13: Matters Relating To Property And Other Assets Held By Kingdom</u>

*Topic No. 3: All Real Or Personal Property Owned, Leased, Or Otherwise Held By Kingdom During The Relevant Time Period.*

*Topic No. 13: Any Properties, Investments Or Other Assets In Which Kingdom Is A Full Or Partial Owner.*

This is an action designed "to put a stop to the incessant and abusive spam robocalling practices [Defendants] have perpetrated for years." Dkt. No. 11-1 at p. 1. Kingdom is not alleged to have participated in any robocalling or other violations of the TCPA. *See generally* Dkt. No. 11-1. In spite of this, Plaintiffs wish to inquire about Kingdom's real estate holdings and any other information describing its personal property, investments, or the uses of all three. Notably, Kingdom has not been accused of, nor has there been any showing that, Kingdom deployed any of its assets (real property or otherwise) to contact potential donors in violation of the TCPA—either in conjunction with Defendants or on its own behalf. As such, the values, nature, and management of the assets held by Kingdom are not proper areas of inquiry, because they do not inform in any way the claims

pleaded in the instant litigation. *See Uppal*, 124 F. Supp. 3d at 814. They are irrelevant, and forcing Kingdom to sacrifice time and expense to give testimony about this topic imposes an undue burden and expense.

   D.   Topic No. 4: Your Purchase Of The Property Located At 12220 NW 68th Court, Parkland, Florida 33076.

Just as with the prior topic, this topic exceeds the scope of the pleadings, Plaintiff's stated purpose in bringing this action, and does nothing to develop or further Plaintiff's TCPA claim. Plaintiffs should be well aware that just as with information about Kingdom's formation, real estate instruments (*e.g.,* warranty deeds, mortgage deeds) along with other sales data relating to the purchase of the 12220 NW 68th Court residence are made publicly available on the Broward County (Florida) Property Appraiser's website.

As with information about corporate formation, Plaintiffs need not invoke the subpoena power of this Court to obtain that information—it is publicly available. Persisting in this effort to obtain irrelevant information through a deposition, when it is publicly available, imposes a needless and unnecessary burden on expense on Kingdom, which Plaintiffs' counsel should be endeavoring to avoid. *See* FED. R. CIV. P. 45(d)(1).

E.    Topic Nos. 5–7: Agreements With Defendants

Where this is an action alleging violations of the TCPA, and Kingdom has not been accused of any such violations, topics pertaining to "any and all" agreements with Defendants not only fail to provide any reasonably particularity, but their breadth necessarily encompasses matters not relevant to the claims and defenses in this case. Likewise, the following topics do not assist in developing the TCPA claim itself:

*Topic No. 5: Any Agreements Between You And Yakim Manasseh Jordan (Or Others Acting On Either Of Your Behalves) Regarding His Residence At 12220 NW 68th Court, Parkland, Florida 33076.*

*Topic 6: Your Relationship With Yakim Manasseh Jordan, Including All Contracts, Agreements, And Written Understandings Between Kingdom And Yakim Manasseh Jordan.*

*Topic No. 7: Your Relationship With Manasseh Jordan Ministries, Inc., Including All Contracts, Agreements, And Written Understandings Between Kingdom And Manasseh Jordan Ministries, Inc.*

Without conceding the foregoing points, however, Kingdom would agree that if this request were narrowly tailored to develop the claims in the pleadings, it would be a proper request. To that end, if this request sought information about any agreements between Kingdom and Defendants related to Kingdom's participation in, assistance with, or support of Defendants' efforts to contact

potential donors using the telephone lines, such a request would be seeking relevant information and would not be improper.

     F.    <u>Topic Nos. 8–10: Agreements With Non-Parties.</u>

Where this is an action alleging violations of the TCPA, and Kingdom has not been accused of any such violations, topics pertaining to "any and all" agreements with certain non-parties not only fail to provide any reasonably particularity, but their breadth necessarily encompasses matters not relevant to the claims and defenses in this case. *See Uppal*, 124 F. Supp. 3d at 814; *Federal Deposit Insurance Corporation*, 2013 WL 12109446, at *2. Likewise, the following topics do not assist in developing the TCPA claim itself:

*Topic No. 8: Your Relationship With Bishop E. Bernard Jordan of Zoe Ministries, Inc. Including All Contracts, Agreements, And Written Understandings Between Kingdom And Bishop E. Bernard Jordan.*

*Topic No. 9: Kingdom's Relationship With Pastor Debra Jordan Of Zoe Ministries, Inc., Including All Contracts, Agreements, And Written Understandings Between Kingdom and Debra Jordan.*

*Topic No. 10: Kingdom's Relationship With Zoe Ministries, Inc. Including All Contracts, Agreements, And Written Understandings Between You and Zoe Ministries, Inc.*

For the same reasons discussed in the foregoing section, this topic is overly broad and irrelevant. This is further underscored by the fact that neither non-party Kingdom, non-party Bishop E. Bernard Jordan, non-party Pastor Debra Jordan, nor

non-party Zoe Ministries, Inc. have been accused of violating the TCPA. Again, without conceding any of the foregoing points, Kingdom would agree that if this request were narrowly tailored to seek information about any Kingdom contracts or agreements with these non-parties that relate to the use of the telephone lines to contact potential donors on behalf of Defendants, it would be a relevant, and, therefore, proper topic. Otherwise, this topic is overly broad and irrelevant as it is not designed to further Plaintiff's claims. *See Uppal*, 124 F. Supp. 3d at 814.

K.    Topic No. 11: Kingdom's Involvement With, Participation In, And Knowledge Of The Telephone Calls Containing Prerecorded Messages That Were Placed By Manasseh Jordan Ministries, Inc. Which Form The Basis of Plaintiffs' Lawsuit Against Manasseh Jordan Ministries, Inc. and Yakim Manasseh Jordan.

Kingdom does not dispute the relevance of this inquiry. In fact, this request is an exemplar of a relevant inquiry with respect to a non-party in this matter. And, as such, this topic serves as the framework for the proposed protective order filed contemporaneously herewith.

## CONCLUSION

Deposition topic nos. 1–10, and 12–14 are neither reasonably particular nor do they appear, even facially, to develop the claims and defenses in the pleadings. Suffice it to say, with respect to the foregoing requests, as stated, Plaintiffs do not have an absolute need for this information to put a stop to the incessant and

abusive spam robocalling practices alleged to have been perpetrated by Defendants. Nor have Plaintiffs made a heightened showing as to the relevance and necessity for the same. The information sought in these topics is simply irrelevant and immaterial to these proceedings; particularly, at this stage where no class has been certified and no judgment has been rendered. To the extent that the requested information is relevant at all, it possesses a minimal mere relevance which is not sufficient to justify compelling Kingdom to designate an individual to testify to the same.

In sum, Plaintiffs' Subpoena notices a deposition on topics that are overbroad and irrelevant such that an examination of Kingdom's corporate designee on these topics imposes an undue burden on a non-party in violation of Fed. R. Civ. P. 45(d)(3)(A)(iv). As such, the Court must quash or modify the Subpoena. Likewise, this undue burden counsels in favor of the Court entering a protective order to shield non-party Kingdom from the intrusive inquiries of Plaintiffs.

WHEREFORE, Kingdom Ministries Church, Inc. respectfully requests that the Court GRANT its motion and quash the offending parts of Plaintiff's Subpoena; and

WHEREFORE, Kingdom Ministries Church, Inc. respectfully requests that the Court GRANT its motion and enter a protective order stating that Plaintiffs deposition of Kingdom Ministries Church, Inc.'s 30(b)(6) designee shall be limited to topics concerning with Kingdom's involvement in, participation in, and knowledge of, if any, the telephone calls containing prerecorded messages that were allegedly placed by Manasseh Jordan Ministries, Inc. and which form the basis of Plaintiffs' lawsuit against Manasseh Jordan Ministries, Inc. and Yakim Manasseh Jordan.

Respectfully submitted, this 9th day of June, 2017.

**KAUFMAN & FORMAN, P.C.**

8215 Roswell Road, Building 800
Atlanta, Georgia, 30350
T: (770) 390-9200
abk@kauflaw.net
mdt@kauflaw.net
*Counsel for Kingdom Ministries Church, Inc.*

Alex B. Kaufman
Georgia Bar No. 136097
Matthew D. Treco
Georgia Bar No. 802181

## CERTIFICATE OF COMPLIANCE

This is to certify that to the best of my knowledge, the foregoing motion has been prepared with one of the font and point selections approved by the court in LR 5.1B, pursuant to LR 7. Specifically, the aforementioned motion has been prepared using Times New Roman font, 14 point.

This 9th day of June, 2017.

KAUFMAN & FORMAN, P.C.

8215 Roswell Road, Building 800
Atlanta, Georgia, 30350
T: (770) 390-9200
abk@kauflaw.net
mdt@kauflaw.net
*Counsel for Kingdom Ministries Church, Inc.*

Alex B. Kaufman
Georgia Bar No. 136097
Matthew D. Treco
Georgia Bar No. 802181

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **MOTION TO QUASH SUBPOENA TO KINGDOM MINISTRIES CHURCH, INC. AND FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system. The undersigned also certifies that it transmitted the same to the electronic mail addresses below, and deposited a true and correct copy of the foregoing in the United States Mail with sufficient postage affixed thereon and addressed to the following:

Rafey S. Balabanian
**EDELSON, P.C.**
123 Townsend Street, Suite 100
San Francisco, CA 94107
rbalabanian@edelson.com

Sydney M. Janzen
Eve-Lynn J. Rapp
Benjamin H. Richman
**EDELSON, P.C.**
350 N. Lasalle Street, Suite 1300
Chicago, IL 60654
sjanzen@edelson.com

Philip L. Fraietta
Joseph I. Marchese
**BURSOR & FISHER, P.A.**
3rd Floor
888 7th Avenue
New York, New York 10019
pfraietta@bursor.com
jmarchese@bursor.com

Peter S. Roeser
Darrell J. Graham
**ROESER BUCHEIT & GRAHAM, LLC**
2 North Riverside Plaza, Suite 1850
Chicago, IL 60606
dgraham@rbglegal.com

Melissa C. McLaughlin
Daniel S. Silverman
**VENABLE LLP**
2049 Century Park East, Suite
2300
Los Angeles, CA 90067
mcmclaughlin@venable.com

Robert A. Seibel
**Law Offices of Robert A. Seibal, P.A.**
3019 B Exeter Drive
Boca Raton, FL 33434
BobSeibel@yahoo.com

This 9th day of June, 2017.

Matthew D. Treco