## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JEFFREY MOLITOR, LAURA C. DE LA CABADA, STEVE CLARKE, and RUTH MAKI, individually and on behalf of all others similarly situated, | Case No. 1:17-mi-00052-WSD-CMS |
| *Plaintiff,* | |
| v. | (Pending in the United States District Court for the Northern District of Illinois, Case No. 1:16-cv-02106) |
| MANASSEH JORDAN MINISTRIES, INC., a New York Religious Corporation, and YAKIM MANASSEH JORDAN, an individual, | |
| *Defendants.* | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO KINGDOM MINISTRIES CHURCH, INC.'S MOTION TO QUASH

## TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

FACTUAL BACKGROUND ................................................ 2

ARGUMENT ........................................................................ 5

   I.    The Subpoena Seeks Information Relevant to Plaintiffs' Claims and Does Not Exceed the Permissible Scope of Discovery. ............ 6

       A.    Topic No. 1: Matters Relating to the Formation and Operation of Kingdom Ministries' Religious Organization ................................................................... 8

       B.    Topic Nos. 2, 3, 4, 12, 13, and 14: Matters Relating to Property, Other Assets, Finances, Donations, and Transfers of Assets ................................................. 9

       C.    Topic Nos. 5, 6, and 7: Agreements and Relationships Between Kingdom Ministries and Defendants ................... 11

       D.    Topic Nos. 8, 9, and 10: Agreements with Third Parties Bishop E. Jordan, Debra Jordan, and Zoe Ministries, Inc. ...................................................................... 12

       E.    Topic No. 11: Involvement Regarding Defendants' Alleged TCPA Violations ........................................ 13

   II.    Aside from Conclusory Allegations, Kingdom Ministries Provides No Evidence That Complying with the Subpoena Would Cause Undue Hardship. ........................................ 13

CONCLUSION ................................................................. 15

i

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340, 351 (1978) ............................................................................ 6

**UNITED STATES DISTRICT COURT CASES:**

*Absolute Eng'g, Ltd. v. Technoflex, Inc.*,
   No. 14-cv-0234, 2015 WL 13333193 (N.D. Ga. June 29, 2015) ............... 6, 8

*Bozo v. Bozo*,
   No. 12-cv-24174, 2013 WL 12128680 (S.D. Fla. Aug. 16, 2013) ................ 9

*British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*,
   200 F.R.D. 586 (W.D. Tex. 2000). ................................................................ 5

*Equal Employment Opportunity Comm'n v. Sirdah Enterprises, Inc.*,
   No. 13-cv-03657, 2015 WL 12630686 (N.D. Ga. Feb. 25, 2015)........ 5, 6, 10

*Hill v. Flagstar Bank, FSB*,
   No. 13-cv-3305, 2013 WL 12070130 (N.D. Ga. Oct. 23, 2013). .......... 5, 7, 14

*Martin v. De Wafelbakkers LLC*,
   No. 13-cv-2529, 2014 WL 12042544 (N.D. Ga. Mar. 4, 2014) ................... 14

*NetJets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*,
   No. 10-cv-483, 2011 WL 6752488 (M.D. Fla. Dec. 22, 2011) ...... 8, 9, 10, 12

*Sams v. GA W. Gate, LLC*,
   316 F.R.D. 693 (N.D. Ga. 2016) ......................................................... 5, 6, 14

**MISCELLANEOUS:**

Fed. R. Civ. P. 26 .................................................................................... 6, 11

Fed. R. Civ. P. 45 ......................................................................................... 6

# INTRODUCTION

Plaintiffs Jeffrey Molitor, Laura C. De La Cabada, Steve Clark, and Ruth Maki ("Plaintiffs") brought this putative class action—currently pending in the Northern District of Illinois—alleging that Defendants Manasseh Jordan Ministries, Inc. ("MJM") and Yakim Manasseh Jordan ("Jordan" and together with MJM, "Defendants") violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), by using an autodialer and a prerecorded voice to call their cellular telephones without their prior express consent.

The parties have been engaged in discovery for the better part of the past year. As explained in further detail below, information became available to Plaintiffs during the discovery period which led them to believe that an entity by the name of Kingdom Ministries Church, Inc. ("Kingdom Ministries") was and is operating as an alter ego of Defendants and/or may be involved in the TCPA violations alleged in the complaint. Accordingly, Plaintiffs subpoenaed Kingdom Ministries for documents and a deposition of its corporate representative. Kingdom Ministries now moves to quash the subpoena for a deposition.[1]

---

[1]    Kingdom Ministries also filed a motion to quash the subpoena for documents in the underlying case pending in the Northern District of Illinois. That motion was denied, as, absent an order from this Court transferring the case pursuant to agreement of the parties, the Northern District of Illinois lacks

Kingdom Ministries fails to establish any grounds on which to quash the subpoena seeking Kingdom's deposition. As explained in detail below, each of the deposition topics set forth in Plaintiffs' subpoena is narrowly tailored to discover information regarding Kingdom Ministries' relationship with Defendants, including its role in Defendants' alleged violations of the TCPA. Moreover, Kingdom Ministries fails to set forth any compelling reason, as is its burden, for failing to comply with the subpoena. Mere assertions that the compliance would impose an "undue burden," without more, is insufficient reason for the Court to quash the subpoena and/or enter a protective order for the deposition.

For these reasons, and as described further below, Plaintiffs respectfully request that the Court deny Kingdom Ministries' motion to quash the subpoena for deposition and enter an Order requiring Kingdom Ministries to produce a witness to testify with respect to each topic listed in the subpoena.

## FACTUAL BACKGROUND

Plaintiffs filed this class action against Defendants to put a stop to the incessant and abusive spam robocalling practices they have perpetrated for years in violation of the TCPA. (*See* Plaintiffs' First Amended Compl. ("FAC"), attached hereto as Exhibit 1.) Plaintiffs allege that Defendants use robocalling to collect

---

jurisdiction to decide the issue. *See Molitor et al. v. Manasseh Jordan Ministries et al.*, No. 16-cv-2106, Dkt. 55 (N.D. Ill. June 19, 2017).

money from those most in need in exchange for the promise of prayers and miracles. (FAC ¶ 3.) Defendants have continued their willful and harassing spam calling practices despite agreeing to no fewer than nine *individual* TCPA settlements over the past three years. (*Id.*)

Over the course of the litigation, Defendants have repeatedly claimed that they do not have the financial resources necessary to agree to a classwide settlement or satisfy any judgment rendered against them. Despite their claims of poverty, Defendants maintain a lavish lifestyle which includes flying on private jets and driving expensive cars. (FAC ¶ 15.) Indeed, Jordan currently lives in a Florida mansion, located at 12220 NW 68th Court, Parkland, FL, which was purchased last year for nearly $3 million. (*See* Exhibit 2 (Affidavit regarding service on Jordan in a separate case), Exhibit 3 (Broward County Purchase History).)

That's where Kingdom Ministries comes in. Kingdom Ministries purchased and currently owns the mansion located at 12220 NW 68th Court, Parkland, Florida where Jordan resides. (*See* Exhibit 3.) The overlap between MJM and Kingdom Ministries doesn't stop there. Until recently—indeed, until Plaintiffs brought it to the attention of Defendants and the Court in the underlying case— Kingdom Ministries' website bore the same contact phone number and contact

address as MJM. (*See* Exhibits 4 and 5.) An August 2016 screen capture from

Kingdom Ministries' website lists the contact entity as "David Few ***Jordan***

Ministries" for donations. (Exhibit 4 (emphasis added).) Additionally, David Few,

who is listed as Kingdom Ministries' CEO and registered agent, maintains a

LinkedIn account saying he has worked in "Experiential Marketing/ Event

Planning" at "MJM" since 2014. (*See* Exhibit 6.) Kingdom Ministries' Secretary

and CFO, Robert Seibel, is also one of Defendants' attorneys in the underlying

case, and has referred to himself as a "friend" of MJM and Jordan. And the URL

"propetmanasseh.tv," owned by Jordan, directs to the Kingdom Ministries'

website. It should also be noted that Plaintiffs cannot find any evidence that

Kingdom Ministries is operational as an actual "ministry" at all, including the fact

that its website provides no information save for the ability to make donations.

Thus, given the extent to which Kingdom Ministries and Defendants are

intertwined, Plaintiffs firmly believe that there is evidence suggesting that the two

entities are the financial and operational alter egos of each other. Plaintiffs

therefore served Kingdom Ministries with the subpoena which it now moves to

quash. Kingdom Ministries has not demonstrated that good cause exists to support

its motion to quash or motion for a protective order and as such, it should be

required to comply with Plaintiffs' subpoena at this time.

4

## ARGUMENT

Kingdom Ministries claims that complying with Plaintiffs' subpoena would be unduly burdensome, and therefore it should not be required to comply with the subpoena for a deposition. (Mot. at 5.) However, it fails to provide any evidence in support of that claim, and thus does not meet the steep burden required under a motion to quash or motion for a protective order.

The party seeking to quash a deposition subpoena has the burden of demonstrating that the deposition subjects that party to an undue burden. *See, e.g.*, *Sams v. GA W. Gate, LLC*, 316 F.R.D. 693, 697–98 (N.D. Ga. 2016); *Equal Employment Opportunity Comm'n v. Sirdah Enterprises, Inc.*, No. 13-cv-03657, 2015 WL 12630686, at *4 (N.D. Ga. Feb. 25, 2015). The same burden exists when the party seeks a protective order for a subpoenaed deposition. *See Hill v. Flagstar Bank, FSB*, No. 13-cv-3305, 2013 WL 12070130, at *4 (N.D. Ga. Oct. 23, 2013). This "heavy burden" requires that the party "establish[] that compliance with that subpoena would be unreasonable and oppressive." *Sams*, 316 F.R.D. at 697 (citing *British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 590 (W.D. Tex. 2000)).

Bare assertions that it would be burdensome to comply with the subpoena are not sufficient to support a motion to quash. *Id.*; *see also Sirdah Enterprises*,

2015 WL 12630686, at *5 ("The bare allegations of hardship and undue burden advanced by defendant and the non-parties, absent a specific showing, are insufficient to satisfy their burden for quashing the subpoenas on this basis."). In determining whether a subpoena subjects a deponent to an undue burden, courts must balance the "relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Sams*, 316 F.R.D. at 697. For the reasons outlined below, Kingdom Ministries fails to show that complying with Plaintiffs' subpoena would subject it to an undue burden.

## I.      The Subpoena Seeks Information Relevant to Plaintiffs' Claims and Does Not Exceed the Permissible Scope of Discovery.

The scope of discovery under a Fed. R. Civ. P. 45 subpoena is co-extensive with the scope permitted under Fed. R. Civ. P. 26, which provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and locations of persons who know of any discoverable matter." *Absolute Eng'g, Ltd. v. Technoflex, Inc.*, No. 14-cv-0234, 2015 WL 13333193, at *1 (N.D. Ga. June 29, 2015). This rule is to be broadly construed with all doubts resolved in favor of permitting open discovery. *Sirdah Enterprises*, 2015 WL 12630686, at *3 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevancy is

"construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case")). A non-party moving to quash a subpoena has the burden of showing the subpoena calls for the disclosure of privileged information. *See Hill*, 2013 WL 12070130, at *3.

Kingdom Ministries has failed to satisfy its burden of showing that the requested information is privileged, its production would impose an undue burden, or is otherwise undiscoverable. Although Plaintiffs' complaint does not contain allegations directly pointed at Kingdom Ministries, it nonetheless raises the possibility that nonparties were operating as alter egos of MJM and Jordan. (*See* FAC ¶¶ 18-21.) The deposition topics identified in the subpoena directly address the financial and operational overlap between Kingdom Ministries and MJM, which is of significant importance to Plaintiffs' claims in the underlying case. Such information would shed light on whether MJM and Jordan indeed use other entities as alter egos to shelter its assets from potentially massive class action judgments. (*See, e.g.*, FAC ¶ 3 ("[Jordan] uses his alter ego, MJM, to knowingly break the law and repeatedly violate the TCPA, all to increase his personal wealth at the expense of non-consenting consumers."); FAC ¶ 24 ("MJM and [nonparty Zoe Ministries Inc.] are alter-egos of each other and act as a single business entity, with one

7

committing TCPA torts and the other sheltering the assets received from such torts.").) Because Plaintiffs' claims raise the alter ego issue by alleging the use of sham companies used to shelter assets accrued from MJM's and Jordan's TCPA violations, the following topics are clearly relevant.

### A.    Topic No. 1: Matters Relating to the Formation and Operation of Kingdom Ministries' Religious Organization.

Kingdom Ministries claims that any information related to its formation and operation "have no bearing on whether or not Defendants have, in fact, violated the TCPA." (Mot. at 10.) But that's not the relevance standard required to discovery information from third parties under Rule 26 and Rule 45. *See Absolute Eng'g, Ltd.*, 2015 WL 13333193, at *1. And, in any event, this information *is* relevant to show whether there existed an alter ego relationship between Defendants and other entities, like Kingdom Ministries, as alleged in the complaint. *See NetJets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*, No. 10-cv-483, 2011 WL 6752488, at *2-3 (M.D. Fla. Dec. 22, 2011) (finding pre-judgment discovery requests related to the formation and ownership of nonparties relevant to showing alter ego relationship with defendant). Kingdom Ministries' conclusory claim that producing the requested information "imposes a needless and unnecessary burden on [sic] expense on Kingdom" is insufficient to prove that it would impose an undue

burden.[2] *Bozo v. Bozo*, No. 12-CV-24174, 2013 WL 12128680, at *2 (S.D. Fla. Aug. 16, 2013) ("[a] party seeking the protective order has the burden to demonstrate good cause and must make a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' in favor of the protective order").

### B.   Topic Nos. 2, 3, 4, 12, 13, and 14: Matters Relating to Property, Other Assets, Finances, Donations, and Transfers of Assets.

Next, Kingdom Ministries argues that information related to its ownership of property and other assets, including the property at 12220 NW 68th Court, Parkland, FL 33076 at which Defendant Jordan resides, is irrelevant and thus not discoverable. (Mot. at 13-14.) Similarly, Kingdom Ministries also claims that its "financial condition informs in no way the violations of the TCPA alleged" in the complaint. (Mot. at 12.) But discovery of a nonparty's financial information and operations, including any ownership or transfers of property and other assets, is particularly relevant when the party issuing the subpoena presents evidence suggesting that a third party is an alter-ego or mere extension of the defendant. *See, e.g.*, *NetJets*, 2011 WL 6752488, at *3 (compelling pre-judgment production of financial distributions of assets as "relevant as it may shed light on the relationship

---

2      Kingdom Ministries also claims that it does not need to produce information related to its incorporation that is publicly available. However, none of the deposition topics are limited to publicly available information.

between [defendant] and these three [nonparty] entities"); *Sirdah Enterprises*, 2015 WL 12630686, at *5 (finding that subpoenaed nonparty business and financial records relevant to allegations and, absent more than conclusory statements their production would impose an undue burden, are discoverable).

The *NetJets* case is particularly instructive. There, as in Kingdom's motion, the party seeking to quash a pre-judgment subpoena seeking information related to its assets and financials "argue[d] that any discovery from [] three non-partis is *per se* irrelevant because the non-parties are not specifically mentioned in the Complaint and there is no contention that they had anything to do with Plaintiffs." *NetJets*, 2011 WL 6752488, at *2. The court, however, acknowledged that the plaintiffs, "through discovery, [] learned that each non-party ha[d] provided significant sums of money to [an entity] and that the checks issued by these non-party companies . . . were all signed by [defendant]." *Id.* Accordingly, the court found that the information sought in the subpoena was relevant to the plaintiffs' claims because it raised the possibility of an alter ego relationship.

Here, Plaintiffs have alleged the possibility of alter ego relationships in their complaint and have otherwise demonstrated that such a relationship may exist between Defendants and Kingdom Ministries. For example, Kingdom Ministries' website's donation page directed visitors until very recently to send their payments

to "David Few *Jordan* Ministries" and listed the address and phone number of MJM. (*See* Exhibit 4.) Necessarily, then, information related to the donations Kingdom Ministries received is undoubtedly relevant to the allegations in the complaint and the relationship between Kingdom Ministries and Defendants. The above-referenced deposition topics are therefore "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and should not be quashed.

### C.   Topic Nos. 5, 6, and 7: Agreements and Relationships Between Kingdom Ministries and Defendants.

Deposition topics 5 through 7 seek information related to any agreements between Kingdom Ministries and Jordan regarding his residence at Kingdom-owned 12220 NW 68th Court property and, more generally, the relationship between Kingdom Ministries and Defendants. Kingdom Ministries concedes, however, that these "would be a proper request[s]" if they sought "to develop the claims in the pleadings." (Mot. at 15.) These deposition topics do just that. Again, as discussed at length above, these topics seek to understand the existence or non-existence of an alter ego relationship between Kingdom Ministries and Defendants, including with respect to any role Kingdom Ministries played in Defendants' robocalling scheme. Moreover, the topics are framed to discover information about any "contracts" or "agreements" between the two entities, which would necessarily

include any written understandings regarding Kingdom Ministries' role, if any, in the alleged TCPA violations. *See NetJets*, 2011 WL 6752488, at *4-5 (agreements between nonparties and defendants are relevant to the determination of alter ego liability).

### D.   Topic Nos. 8, 9, and 10: Agreements with Third Parties Bishop E. Jordan, Debra Jordan, and Zoe Ministries, Inc.

Kingdom Ministries' motion turns on the argument that it should not be required to comply with any deposition topic that does not seek information designed to further Plaintiffs' claims in the underlying complaint. Yet, despite the complaint containing numerous allegations with respect to an alter ego relationship between third parties Bishop E. Jordan, Debra Jordan, and Zoe Ministries, Inc. and Defendants, Kingdom Ministries refuses to produce any information to that end. The existence or non-existence of agreements between Kingdom Ministries and Bishop E. Jordan, Debra Jordan, and/or Zoe Ministries, Inc. may demonstrate whether any or all of these individuals or entities were indeed sheltering assets obtained through Defendants' alleged TCPA violations. Therefore, deposition topics 8 through 10 clearly relate to claims set forth in Plaintiffs' complaint, and Kingdom Ministries should be required to produce discovery relevant to those allegations. *See NetJets*, 2011 WL 6752488, at *4 (allowing discovery from nonparty on information related to agreements between nonparties and other

individuals or entities between which plaintiffs believed there existed an alter ego relationship).

### E.    Topic No. 11: Involvement Regarding Defendants' Alleged TCPA Violations.

Kingdom Ministries concedes that this topic is relevant, calling it "an exemplar of a relevant inquiry with respect to a non-party in this matter." (Mot. at 17.) Because Kingdom Ministries neither disputes that this information is relevant nor asserts any other objection, it should be required to produce a witness to testify as to Topic No. 11.

### II.   Aside from Conclusory Allegations, Kingdom Ministries Provides No Evidence That Complying with the Subpoena Would Cause Undue Hardship.

Here, Kingdom Ministries presents nothing more than conclusory statements of undue burden, providing no evidence that it will suffer any burden from sitting for a deposition (or, for that matter, producing documents). Indeed, if Plaintiffs are ultimately successful in adding Kingdom Ministries as a defendant to the underlying action on an alter ego theory of liability—an outcome that Plaintiffs are confident they will achieve—it will be required to produce documents and sit for a deposition. Plaintiffs have also indicated in the subpoena that they are willing to take the deposition at a location and time that are convenient for the deponent. *See Hill*, 2013 WL 12070130, at *4 (finding no undue burden, in part, when party

"stated that [it was] willing to take the deposition at a location and time that are convenient for [deponent].").

Because the information sought is undeniably relevant to the allegations set forth in the complaint, including but not limited to Defendants' alter ego relationships, it is Kingdom Ministries' burden to show that complying with the subpoena would be unduly burdensome. *See, e.g.*, *Sams*, 316 F.R.D. at 697 (party seeking to quash subpoena for deposition has the heavy burden of demonstrating "that compliance with that subpoena would be unreasonable and oppressive"); *Hill*, 2013 WL 12070130, at *4 ("To the extent [a nonparty] seeks a protective order, he carries the burden of showing good cause and/or the right to be protected.") It has failed to do so, and its conclusory assertions that the subpoena "[pries] into a non-party's sensitive affairs" is insufficient. (*See* Mot. at 8.); *see Martin v. De Wafelbakkers LLC*, No. 13-cv-2529, 2014 WL 12042544, at * (N.D. Ga. Mar. 4, 2014) (denying motion to quash by nonparty when subpoena requested relevant information and nonparty advanced "generic" objections related to "privacy and confidentiality"). Moreover, the interests served in requiring Kingdom Ministries to comply with the subpoena (i.e., the need to investigate the financial and operational overlap between Kingdom and MJM) outweigh any interests furthered

by quashing it, especially given that Kingdom has completely failed to articulate any such interests.

Consequently, Kingdom Ministries has failed to establish that the subpoena should be quashed, or that a protective order is required for the requested deposition.

## CONCLUSION

For the reasons discussed above, Plaintiffs Jeffrey Molitor, Laura De La Cabada, Steve Clarke, and Ruth Maki respectfully ask that the Court enter an Order (i) denying third-party Kingdom Ministries Church, Inc.'s motion to quash; (ii) compelling third-party Kingdom Ministries Church, Inc. to comply with the deposition subpoena; and (iii) granting such other and further relief that the Court deems reasonable and just.

Respectfully submitted,

**JEFFREY MOLITOR, LAURA C. DE LA CABADA MORO, STEVE CLARKE, AND RUTH MAKI**, individually and on behalf of all others similarly situated,

Dated: June 26, 2017        By:  /s/ Laura Wilson Speed
                           One of Plaintiffs' Attorneys

Laura Wilson Speed (Bar No. 670599)
speed@ssjwlaw.com
SHAMP SPEED JORDAN & WOODWARD LLC
1718 Peachtree Street N.W., Suite 660
Atlanta, Georgia 30309
Tel: 404.893.9400
Fax: 404.260.4180

Benjamin H. Richman*
brichman@edelson.com
Sydney M. Janzen*
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Counsel for Plaintiffs and the Proposed
Class

16

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that to the best of my knowledge, the foregoing has been prepared with one of the font and point selections approved by the Court in LR 5.1B, pursuant to LR 7. Specifically, the aforementioned motion has been prepared using Times New Roman font, 14 point.

This 26th day of June, 2017.

/s/ Laura Wilson Speed

Laura Wilson Speed (Bar No. 670599)
speed@ssjwlaw.com
SHAMP SPEED JORDAN & WOODWARD LLC
1718 Peachtree Street N.W., Suite 660
Atlanta, Georgia 30309
Tel: 404.893.9400
Fax: 404.260.4180

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2017, I caused to be served the above and foregoing ***Plaintiffs' Response in Opposition to Kingdom Ministries Church, Inc.'s Motion to <u>Quash</u>*** by causing a true and accurate copy of such paper to be filed and served with the Clerk of Court using the CM/ECF electronic filing system.

/s/ Laura Wilson Speed

18