## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JEFFREY MOLITOR,
LAURA C. DE LA CABADA,
STEVE CLARKE, and
RUTH MAKI, individually and on
behalf of all others similarly situated,

    *Plaintiffs,*

v.

MANASSEH JORDAN
MINISTRIES, INC., a
New York Religious Corporation, and
YAKIM MANASSEH JORDAN, an
individual,

    *Defendants.*

CASE NO. 1:17-mi-00052-WSD-CMS


(Pending in the United States District
Court for the Northern District of
Ilinois,Case No. 1:16-CV-02106)

## MOTION TO QUASH SUBPOENA FOR DOCUMENTS
## TO KINGDOM MINISTRIES CHURCH, INC.

COMES NOW, Kingdom Ministries Church, Inc. ("Kingdom"), a non-party

to the instant litigation, and files this Motion to Quash pursuant to Rule 45(d)(3) of

the FEDERAL RULES OF CIVIL PROCEDURE, showing this Honorable Court as

follows:

## BACKGROUND

Plaintiffs served on Kingdom two separate subpoenas—a subpoena for production of documents (the "Document Subpoena") and a subpoena for a deposition (the "Deposition Subpoena"). Both subpoenas were issued by the United States District Court for the Northern District of Illinois, and both subpoenas seek substantially the same information—albeit in different forms. On June 6, 2017, Kingdom filed a motion to quash the Document Subpoena in the United States District Court for the Northern District of Illinois.[1] On June 9, 2017, Kingdom filed a separate motion to quash the Deposition Subpoena in this Court.

On June 19, 2017, the Judge Schenkier, of the United States District Court for the Northern District of Illinois, held a hearing on Kingdom's June 6, 2017 motion to quash the Document Subpoena. In recognition of the pending motion to

---

[1] With recent amendments to the Federal Rules, motions to quash must be filed in the court for the district in which compliance is required. The place for compliance with the Deposition Subpoena is unquestionably the Northern District of Georgia. The place for compliance with the Document Subpoena, however, was less clear, because that subpoena instructed Kingdom to produce documents to an Edelson, P.C. email address. Further complicating this issue is the absence of meaningful case law on how an electronic location will be treated for purposes of determining a subpoena's place for compliance and, thus, where a related motion to quash must be filed. In the absence of legal authority, Kingdom surmised that because the designated electronic location belonged to an Edelson, P.C. attorney located in Chicago, Illinois, the place for compliance with the subpoena for documents was Chicago, Illinois, and the motion to quash the Document Subpoena should be filed in the Northern District of Illinois.

quash the related Deposition Subpoena, which was, and is, pending before this Court, Judge Schenkier denied the motion to quash the Document Subpoena without prejudice to Kingdom's ability to raise that motion's issues in this Court.

In that the motion to quash the Deposition Subpoena (currently pending before this Court) and the motion to quash the Document Subpoena make the same legal arguments, and both subpoenas seek substantially the same information, Kingdom anticipated that a ruling by this Court as to the relevance or propriety of the Deposition Subpoena's topics of inquiry would, likewise, guide the parties in determining whether the documents sought by the Document Subpoena were also relevant or proper—and, consequently, whether certain documents would need to be produced. With that in mind, and in an effort to avoid burdening the Court with what might be redundant or otherwise cumulative filings involving the presentation of the same legal arguments, it was Kingdom's intention to abstain from refiling with the Court its Illinois motion to quash the Document Subpoena. However, recent circumstances have revealed countervailing considerations that compel Kingdom to refile with this Court its Illinois motion to quash the Document

Subpoena.[2] It is hoped that doing so will ensure that following the Court's ruling, each party will fully understand its rights and obligations vis-à-vis the subpoenas.

## INTRODUCTION

This is a putative class action brought by consumers, on behalf of consumers, that alleges Defendants Mannasseh Jordan Ministries, Inc. ("MJM") and Yakim Manasseh Jordan ("Jordan") (collectively, "Defendants") committed multiple violations of the Telephone Consumer Protection Act, codified at 47 U.S.C. § 227 *et. seq.* (the "TCPA"). Plaintiffs, in their own words, describe the nature of this action as being one designed "to put a stop to the incessant and abusive spam robocalling practices [Defendants] have perpetrated for years." Dkt. No. 1-1 at p. 1. Purporting to be a part of this endeavor, in or around May 15, 2017, counsel for Plaintiffs and the Putative Class served on non-party Kingdom a Subpoena to Produce Documents, Information, or Objects Or to Permit Inspection

---

[2] For purposes of filing in this Court, minor alterations have been made to the Illinois motion to quash.

of Premises in a Civil Action (the "Subpoena").[3] Non-party Kingdom is a Georgia nonprofit corporation with its principal office located in Jonesboro, Georgia.[4]

In contravention of FED. R. CIV. P. 45, the Subpoena commands non-party Kingdom to produce a multiplicity of documents and a broad array of sensitive information that go well beyond the claims and defenses set out in the above-captioned lawsuit's pleadings. More precisely, these requests exceed Plaintiffs' own stated purpose in bringing this action: to stamp out unwanted robocalling. Far from honoring this objective, the Subpoena seeks, among other things, sensitive information related to a non-party's religious practices, its financial condition, its donor rolls, and the donations themselves—including the uses thereof. None of this bears in any way on the alleged robocalling practices of Defendants MJM and Jordan. In fact, no conduct of any kind—malicious or otherwise—is alleged against non-party Kingdom in the pleadings filed with the Court. Suffice it to say, the wide net Plaintiffs are casting with the Subpoena subjects Kingdom to an undue burden, counseling in favor of the Court exercising its power to quash Plaintiffs' procedural overreach.

---

[3] A true and correct copy of the Subpoena is attached hereto as Exhibit "1." The Subpoena commands compliance on May 22, 2017. Owing to service difficulties, Plaintiffs' counsel extended the time for compliance to June 6, 2017.

[4] A true and correct copy of Kingdom's 2017 Annual Registration with the Georgia Secretary of State is attached hereto as Exhibit "2."

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.1

On Thursday, June 1, 2017, Georgia counsel for Kingdom, Matthew D. Treco ("Mr. Treco"), telephoned counsel for Plaintiffs, Benjamin H. Richman ("Mr. Richman"), to discuss the matters set out in this motion. Both Mr. Treco and Mr. Richman each made a good faith attempt to resolve their differences but were unable to reach an accord. That these attempts were unsuccessful was not the fault of either Mr. Treco or Mr. Richman.

In sum, Mr. Treco relayed the notion that the subject matter of the subpoena went well beyond the claims and defenses set out in the pleadings and, therefore, the documents requested by the subpoena were irrelevant. To that end, Mr. Treco emphasized that the Subpoena's requests imposed an undue burden on a non-party, Kingdom. To ameliorate that burden, Mr. Treco asked Mr. Richman to limit Plaintiffs' inquiry to matters confined by the claims and defenses in the pleadings. Mr. Richman declined to so limit the Subpoena's inquiry. As a result, non-party Kingdom was forced to file the present motion.

## ARGUMENT AND CITATION TO AUTHORITY

**I.   NON-PARTIES ARE ENTITLED TO SPECIAL PROTECTIONS FROM
SUBPOENAS THAT IMPOSE ON THEM UNDUE BURDENS SUCH AS
DOCUMENT REQUESTS THAT PRY INTO MATTERS THAT ARE BEYOND
THE CLAIMS AND DEFENSES IN THE PLEADINGS—THESE MATTERS BEING
IRRELEVANT.**

"Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the court for
the district where compliance is required must quash or modify a subpoena that . . .
[] subjects a person to undue burden." *Armstead v. Allstate Property & Casualty
Insurance Company*, Case No. 1:14-cv-586-WSD, 2016 WL 3626272, at *1 (N.D.
Ga. Jul. 7, 2016) (citing FED. R. CIV. P. 45(d)(3)(A)).[5] The protective mandate of
Rule 45 is not to be confused with the "discretionary language of Rule 26(c), under
which a court **may** make any order which justice requires to protect a party or
person from . . . undue burden." *Uppal v. Rosalind Franklin University of
Medicine and Science*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015) (emphasis added).
As it was succinctly phrased by this court "[t]he desideratum [or sin qua non] of
[Rule 45] is the protection of non-parties from undue burdens." *Id.* (citing *Last
Atlantis Capital, LLC v. AGS Specialist Partners*, 2013 WL 182792, at *1 (N.D.
Ill. 2013)). "It is a command." *Id.*

---

[5] In addition to the court, the rule imposes a separate mandate on the attorney
issuing the subpoena to "take reasonable steps to avoid imposing undue burden or
expense on a person subject to the subpoena. FED. R. CIV. P. 45(d)(1).

When determining whether a non-party needs this protection "because it presents an undue burden" courts consider the "relevance of the information requested, the requesting party's need for the [information], the breadth of the [] request, the time period covered by the request and the burden imposed." *Estate of Manship v. United States*, Case No. 1:08-cv-3239-CAP, 2009 WL 10668306, at *7 (N.D. Ga. Jun. 5, 2009). Informing these inquiries is the important, and not to be forgotten, truth that "nonparties are **not** treated exactly like parties in the discovery context." *American Soc. Of Media Photographers, Inc. v. Google, Inc.*, Case No. 13-c-408, 2013 WL 1883204, at *2 (N.D. Ill. May 6, 2013). In fact, "non-parties are entitled to somewhat greater protection." *Id*. And for that reason, "the possibility of mere relevance may not be enough." *Id*.

Notably, "whether the information sought is relevant to the issues in the lawsuit is part of the analysis of whether the burden is undue." *Builders Ass'n of Greater Chicago v. City of Chicago*, Case No. 96-c-1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002). And it is not the case that "any evidence that [is] relevant to the subject matter of th[is] case is fair game." *Uppal*, 124 F. Supp. 3d at 814. Rather, "[t]he 2000 amendments to Rule 26(b)(1) narrowed that definition so that today parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Uppal*, 124 F. Supp. 3d at 814. Indeed,

the Advisory Committee explained that this amendment "signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are **not identified** in the pleadings." FED. R. CIV. P. 26(b)(1), Advisory Committee Notes to 2000 Amendments. Simply put, discovery, through subpoenas or otherwise, is confined by what has been alleged, and discovery tools are not to be used to venture beyond the allegations in the pleadings in an effort to gin up additional and yet to be identified claims.

If, however, Kingdom were to read between the lines, Plaintiffs appear to be investigating transfers of assets and financial transactions in an effort to establish fraudulent acts, including fraudulent transfers of assets. Of course, a review of the pleadings shows that no such conduct has been alleged as to Kingdom. And putting aside that Plaintiffs are not executing on a judgment pursuant to FED. R. CIV. P. 69 (the class is not even certified yet), even if it were, discovery such as that presently sought in the Subpoena would require a "somewhat heightened showing of necessity and relevance." *Fudali v. Pivotal Corporation*, 2009 WL 10668516, at *5 (N.D. Ga. Oct. 30, 2009) (discussing what is required to pry into the sensitive financial affairs of non-parties even in post judgment discovery). Plaintiffs have made no such showing.

The heightened showing described above is instructive, because it is clear that even with a judgment in hand, a party needs to have a substantive basis for prying into a non-party's sensitive affairs. Here, however, Plaintiffs are not even judgment creditors and, yet, they would presuppose to invoke this Court's subpoena power to extract sensitive information from a non-party with even less justification. This, again, counsels in favor of quashing the Subpoena.

## II.   THE CLAIMS SET OUT IN PLAINTIFFS' PLEADINGS ARE CONFINED SOLELY TO RELIEF UNDER THE TCPA.

As previously mentioned, Plaintiffs were moved to bring this action "to put a stop to the incessant and abusive spam robocalling practices [Manasseh Jordan Ministries, Inc. and Yakim Manasseh Jordan] have perpetrated for years." Dkt. No. 1-1 at p. 1. Specifically, Plaintiff Molitor alleges that he has received more than 50 robocalls from Defendants, all of which feature a prerecorded voice. Dkt. No. 1-1 at p. 15. Likewise, Plaintiff De la Cabada alleges that she has received more than 108 robocalls from Defendants. *Id*. at p. 18. Plaintiff Clarke alleges that he has received at least 14 similar calls. Dkt. No. 1-1 at p. 18. And Plaintiff Maki alleges that he has received at least 6 similar calls. *Id*. at 19. As a result of this alleged conduct, Plaintiffs Molitor, De la Cabada, Clarke, and Maki, individually, and on behalf of a putative class, allege that Defendants have violated federal law—specifically, 47 U.S.C. § 227(b)(1)(A)(iii)—and they and the putative class

members are entitled to the statutory damages set out in the TCPA. This is the only cause of action pleaded, and the prayer for relieve is similarly confined to relief under the TCPA.

### III. PLAINTIFFS' SUBPOENA IS NOT DESIGNED TO DEVELOP TCPA CLAIMS IN PLAINTIFFS' PLEADINGS; RATHER, THE SUBPOENA PRIES INTO THE RELIGIOUS AND FINANCIAL AFFAIRS OF A NON-PARTY IN AN APPARENT ATTEMPT TO DEVELOP NEW CLAIMS.

Plaintiffs' Subpoena appears, on its face, not to be designed to develop the existing TCPA claim found in the pleadings. Instead, the Subpoena is designed to pry into the religious and financial affairs of non-party Kingdom—issues that bear no relationship to the claims and defenses identified in the pleadings—in a rather transparent attempt to develop new claims. This is not appropriate and provides the Court ample justification to quash the Subpoena. *See e.g.,*, *Uppal*, 124 F. Supp. 3d at 814. Furthermore, numerous documents requested are either freely available in the public record or, to the extent they exist, they can be obtained from the named Defendants by propounding discovery requests in the ordinary course.

### A. Request Nos. 1–4: Documents Relating To Incorporation, Formation, and Corporate Structure.

The following document requests pertaining to Kingdom's incorporation, formation, and corporate structure do not develop or further the TCPA claims in

Plaintiffs' pleadings—they are irrelevant to these proceedings, and Plaintiffs do not

have a substantial need for the same:

*Request No. 1: All Documents Sufficient To Show the Incorporation of Kingdom, Including Any Articles Of Incorporation Or Certificates Of Incorporation.*

*Request No. 2: Documents Sufficient To Identify All States In Which You Are Registered To Do Business.*

*Request No. 3: All Documents Relating To The Formation And Operation Of Your Religious Organization.*

*Request No. 4: Documents Sufficient to Identify All Subsidiaries, Companies, Corporations, And Organizations Owned Or Managed By You.*

Kingdom's incorporating documents have no bearing on whether or not

Defendants have, in fact, violated the TCPA. Moreover, the incorporating

documents of Kingdom are publicly available through the office Secretary of State

of the State of Georgia and can be found on readily its webpage. Likewise, state

corporate registration documents can be found by consulting the webpage of **any**

secretary of state for the fifty states. And while the possible universe of documents

related to the "formation" of Kingdom may be finite, the possible universe of any

documents related to the "operation" of Kingdom could encompass any number of

documents—from sensitive donor information, internal communications, etc. With

reference to the claims and defenses in the pleadings it is difficult to comprehend

how this "anything and everything" request fits within the narrowly pleaded

complaint, which seeks relief only for alleged violations of the TCPA. Not to mention that such a broad request is not sufficiently particular. Simply put, this information, like much of the information sought by Plaintiffs, does not assist in establishing whether or not Defendants, in fact, violated the TCPA. As such, these documents are irrelevant.

B.   Request No. 5–11: Documents Relating to Kingdom's Finances.

Plaintiffs attempts to pry into the financial affairs of Kingdom, a religious organization absent a heightened showing of relevance and necessity, are improper. It goes without saying, that these requests, as with most of the others, do not further or assist in developing the single TCPA claim in Plaintiffs' pleadings:

*Request No. 5: Documents Sufficient To Identify Your Financial Condition, Including Balance Sheets, Profit And Loss Statements, And Tax Returns During The Relevant Time Period.*

*Request No. 6: Documents Sufficient to Identify Any And All Transfers Of Assets By, To And Between Kingdom, And Kingdom's Principals, Including The Amount Of Money Or Property At Issue, The Transferee And Transferee, And The Date Of Transfer.*

*Request No. 7: Documents Sufficient To Identify Any And All Transfers of Assets By, To And Between Kingdom And Manasseh Jordan Ministries, Inc.*

*Request No. 8: Documents Sufficient To Identify Any And All Transfers Of Assets By, To And Between Kingdom and Yakim Manasseh Jordan.*

*Request No. 9: Documents Sufficient To Identify Any And All Transfers Of Assets By, To And Between You and Bishop E. Bernard Jordan Of Zoe Ministries, Inc.*

*Request No. 10: Documents Sufficient To Identify Any And All Transfers Of Assets By, To And Between You And Pastor Debra Jordan Of Zoe Ministries, Inc.*

*Request No. 11: Documents Sufficient To Identify Any And All Transfers Of Assets By, To And Between Kingdom And Zoe Ministries, Inc.*

For the same reasons discussed in the foregoing section, these requests are overly broad and seek information that goes beyond the scope of the claims and defenses in the pleadings. Kingdom's financial condition informs in no way the violations of the TCPA alleged to have been committed by Defendants. Kingdom's line item expenses, its cash position, the accrued depreciation of its long term assets, and the like do not further Plaintiff's claims regarding robocalling. As such, they are irrelevant. This is underscored by the fact that some of these requests seek the production of documents evidencing a relationship between other non-parties— these non-parties not having been accused of violating the TCPA either.

C.    Request Nos. 12–17: Documents Related To Real And Personal Property Held By Kingdom And The Management Thereof.

This is an action designed "to put a stop to the incessant and abusive spam robocalling practices [Defendants] have perpetrated for years." Dkt. No. 1-1 at p. 1. Kingdom is not alleged to have participated in any robocalling or other violations of the TCPA. *See generally* Dkt. No. 1-1. In spite of this, Plaintiffs wish to pore over Kingdom's real estate holdings and any other documentation describing its personal property or the uses both:

*Request No. 12: All Documents Sufficient To Identify All Real And Personal Property Owned, Leased Or Otherwise Held By Kingdom.*

*Request No. 13: For Each Piece Of Real And Personal Property Described Above, All Documents Sufficient To Identify Each Person Who Has Used Or Leased The Property, When That Person Used Or Leased The Property, How Long That Person Used Or Leased The Property, And Whether That Person Paid Any Amount To Use Or Lease The Property.*

*Request No. 14: All Documents Sufficient To Identify All Policies Related To The Use Of Kingdom's Owned And/Or Leased Personal Property By Yakim Manasseh Jordan, Any Jordan Family Members, Kingdom Employees And Representatives, And/Or Any Other Members Of Manasseh Jordan Ministries, Inc. Including Restrictions On Use, Payment For Use Duration Of Use, Liability For Use, Etc.*

*Request No. 15: All Documents Relating To Kingdom's Purchase Of Property Located At 12220 NW 68th Court, Parkland, FL 33076.*

*Request No. 16: All Documents Relating To Anyone Who Resides At 12220 NW 68th Court, Parkland, FL, Including Any Agreements Kingdom Have With Yakim Manasseh Jordan Regarding His Residence At The Property.*

*Request No. 17: All Documents Relating To Any Real Or Personal Property Owned Or Leased By Kingdom, Including 12220 NW 68th Court, Parkland, FL, That Is Used Or Leased, May Be Used Or Leased, Or Has Been Used Or Leased By Yakim Manasseh Jordan, Any Jordan Family Members, Any Of Kingdom's Employees Or Representatives, And/Or Any Employees Of Manasseh Jordan Ministries, Inc.*

Kingdom has not been accused of, nor has there been any showing that, Kingdom deployed any of its assets (real property or otherwise) to contact potential donors in violation of the TCPA—either in conjunction with Defendants or on its own behalf. As such, the values, nature, and management of the assets

held by Kingdom do not inform in any way the claims pleaded in the instant litigation.

With that being said, and while Kingdom reiterates that the foregoing documents bear no relationship to this matter, Plaintiffs should be well aware that just as with incorporating documents made publicly available through each state's secretary of state's office, real estate instruments (*e.g.,* warranty deeds, mortgage deeds) along with other sales data relating to the purchase of the 12220 NW 68th Court residence—and all other Broward County, Florida residences for that matter—are made publicly available on the Broward County (Florida) Property Appraiser's website. Plaintiffs need not invoke the subpoena power of this Court to obtain that information.

D.    Request No. 18: Documents Sufficient To Identify Any URLs Owned And/Or Operated By Kingdom.

As has oft been repeated in this motion, this is an action "to put a stop to the incessant and abusive spam robocalling practices [Defendants] have perpetrated for years." Dkt. No. 1-1 at p. 1. Kingdom is not alleged to have participated in any robocalling or other violations of the TCPA. *See generally* Dkt. No. 1-1. In spite of this, Plaintiffs wish to scrutinize Kingdom's online presence. This is not action alleging violations of the Anti-Cybersquatting Piracy Act (15 U.S.C. § 1125(d)); violations of the CAN-SPAM Act (15 U.S.C. § 103, *et seq.*); or the like. This an

action about violations of the TCPA and this request goes well beyond the claims set out in the pleadings. The nature and extent of Kingdom's online presence does not further or develop the TCPA claims, which relate exclusively to phone calls directed at cellular phones. Plaintiff has not identified any online conduct as providing a basis for its TCPA claims.

E.   Request No. 19: All Documents Sufficient To Identify Any Donations Received By Kingdom Through Kingdom's Website Or Elsewhere, Including Documents Sufficient To Identify How The Funds Were Used, Allocated Or Distributed.

Again, this is an action designed to put a stop to the robocalling practices of Defendants. Plaintiffs, however, wish to scrutinize the donor rolls of Kingdom—a religious nonprofit. Identities of donors to a religious organization are highly confidential, and making public these identities and donation amounts may reveal the religious beliefs otherwise anonymous members of the public want kept private. Revealing such information may discourage future donations—donations being the lifeblood of a religious organization. Furthermore, and as with other sensitive financial information sought in the Subpoena, to the extent that Plaintiffs are actually seeking information about Defendants finances and/or transactions, Plaintiff should serve Defendants with party discovery in the ordinary course. Defendants are capable of providing this information if it exists. On the other hand, prying into a non-party's affairs to get at a party's information in a circuitous

manner is both inefficient and unfair to individuals and entities that are neither subject to the personal jurisdiction of a court nor accused of any wrongdoing.

F.     Request Nos. 20–21 And 24–26: Documents Related To The Employment History of Kingdom Personnel and Its Contracts With Other Entities

Where this is an action alleging violations of the TCPA, and Kingdom has not been accused of any such violations, the identities of Kingdom's employees, whether they be current or former employees of MJM, or whether they have never worked for MJM at all, is not relevant to the claims and defenses in this case.

Likewise, the following requests do not assist in developing the TCPA claim itself:

*Request No. 20: Documents Sufficient To Identify Any Officers, Agents, Or Employees That Were At Any Time Employed By Both Kingdom And Manasseh Jordan Ministries, Inc. Or That Are Employed By Kingdom Now That Were Previously Employed By Manasseh Jordan Ministries, Inc.*

*Request No. 21: Documents Sufficient To Identify Any Officers, Agents, Or Employees That Were At Any Time Employed By Both Kingdom And Zoe Ministries, Inc. Or That Are Employed By Kingdom Now That Were Previously Employed By Zoe Ministries, Inc.*

*Request No. 24: All Contracts, Agreements, And Written Understandings Between Kingdom And Bishop E. Bernard Jordan of Zoe Ministries, Inc.*

*Request No. 25: All Contracts, Agreements, And Written Understandings Between Kingdom And Pastor Debra Jones of Zoe Ministries, Inc.*

*Request No. 26: All Contracts, Agreements, And Written Understandings Between Kingdom And Zoe Ministries, Inc.*

Indeed, these requests do not further Plaintiffs' stated goal of ending the alleged robocalling practices of Defendants. Furthermore, MJM, a party to this action, can be served with ordinary discovery seeking, at a minimum, information about its own employees and, perhaps, their work history.[6] Plaintiffs need not wield the subpoena power of this Court to obtain this information from a non-party, such as Kingdom.

   G.    Request No. 22–23: Documents Related To Written Agreements With Defendants.

This is an action designed "to put a stop to the incessant and abusive spam robocalling practices [Defendants] have perpetrated for years." Dkt. No. 1-1 at p. 1. Kingdom is not alleged to have participated in any robocalling or other violations of the TCPA. *See generally* Dkt. No. 1-1. In spite of this, Plaintiffs have made the following requests:

*Request No. 22: All Contracts, Agreements, And Written Understandings Between Kingdom And Manasseh Jordan Ministries, Inc.*

*Request No. 23: All Contracts, Agreements, And Written Understandings Between Kingdom and Yakim Manasseh Jordan.*

---

[6] It is also worth noting that the subjects of certain of these requests are non-parties, which further underscores the relevance of this request, or, rather, the lack thereof. Neither Kingdom nor any of the other non-parties identified in these requests have been accused of violating the TCPA—the sole and singular cause of action set out in Plaintiffs' pleadings.

Not only is this request overbroad on its face, because it goes well beyond the claims set out in the pleadings, but, in addition, Plaintiffs have not shown that they have an absolute need for this type of information—whether it be agreements between Kingdom and Defendants or between Kingdom and anyone else. Without conceding the foregoing points, however, Kingdom would agree that if this request were narrowly tailored to develop the claims in the pleadings, it would be a proper request. To that end, if this request sought information about any written agreements between Kingdom and Defendants related to Kingdom's participation in, assistance with, or support of Defendants' efforts to contact potential donors using the telephone lines in violation of the TCPA, such a request would be seeking relevant information, the production of which would nto impose an undue burden on non-party Kingdom. With that being said, Kingdom has no documents responsive to such a request.

Suffice it to say, with respect to each and every one of these requests, as stated, Plaintiffs do not have an absolute need for this information to put a stop to the incessant and abusive spam robocalling practices alleged to have been perpetrated by Defendants. Nor have Plaintiffs made a heightened showing as to the relevance and necessity for the same. The documents sought here are simply irrelevant and immaterial to these proceedings; particularly, at this stage where no

class has been certified and no judgment has been rendered. To the extent that the requested documents are relevant at all, they possess a very minimal mere relevance which is not sufficient to justify their production by a non-party, such as Kingdom.

## CONCLUSION

Plaintiffs' Subpoena attempts to compel the production of documents and things that impose an undue burden on a non-party in violation of Fed. R. Civ. P. 45(d)(3)(A)(iv). The Subpoena's requests go well beyond the claims and defenses in the pleadings and, in no way, do these requests assist in developing the alleged TCPA claims. To the contrary, the Subpoena seeks pry into the sensitive financial and religious affairs of Kingdom Ministries Church, Inc. As such, the Court must quash or modify the Subpoena to enforce the special protections afforded to non-parties.

WHEREFORE, Kingdom Ministries Church, Inc. respectfully requests that the Court GRANT its motion and quash Plaintiffs' subpoena.

Respectfully submitted, this 27th day of June, 2017.

KAUFMAN & FORMAN, P.C.

8215 Roswell Road, Building 800          Alex B. Kaufman
Atlanta, Georgia, 30350                  Georgia Bar No. 136097

T: (770) 390-9200                           Matthew D. Treco
abk@kauflaw.net                             Georgia Bar No. 802181
mdt@kauflaw.net
*Counsel for Kingdom Ministries Church, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that to the best of my knowledge, the foregoing motion has been prepared with one of the font and point selections approved by the court in LR 5.1B, pursuant to LR 7. Specifically, the aforementioned motion has been prepared using Times New Roman font, 14 point.

This 27th day of June, 2017.

**KAUFMAN & FORMAN, P.C.**

8215 Roswell Road, Building 800
Atlanta, Georgia, 30350
T: (770) 390-9200
abk@kauflaw.net
mdt@kauflaw.net
*Counsel for Kingdom Ministries Church, Inc.*

Alex B. Kaufman
Georgia Bar No. 136097
Matthew D. Treco
Georgia Bar No. 802181

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **MOTION TO QUASH SUBPOENA FOR DOCUMENTS TO KINGDOM MINISTRIES CHURCH, INC.** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recpients:

Laura Wilson Speed
**SHAMP SPEED JORDAN & WOODWARD, LLC**
1718 Peachtree N.W., Suite 660
Atlanta, Georgia 30309
speed@ssjwlaw.com

This 27th day of June, 2017.

Matthew D. Treco